**Case No. 20-55880**

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

STEPHANIE CLIFFORD, aka STORMY DANIELS,

Plaintiff/Appellant,

v.

DONALD J. TRUMP,

Defendant/Appellee.

---

On Appeal from the United States District Court
For the Central District of California, Los Angeles
No. 2:18-cv-06893-JLS-FFM
Hon. Josephine L. Staton

---

**AMENDED/CORRECTED OPENING BRIEF**

---

Clark O. Brewster
Mbilike M. Mwafulirwa
Brewster & De Angelis, P.L.L.C.
2617 E. 21 Street
Tulsa, OK  74114
(918) 742-2021
***Attorneys for Plaintiff/Appellant***

April 22, 2021

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................. iii

INTRODUCTION ............................................................................... 1

JURISDICTIONAL STATEMENT ........................................................ 3

ISSUES PRESENTED......................................................................... 3

STATEMENT OF THE CASE............................................................... 5

    A.  Stephanie Clifford sues Donald J. Trump for defamation........................ 5

    B.  The proceedings on the merits in the district court................................... 5

    C.  The district court issues its rulings on the merits; this Court affirms on appeal............................................................. 6

    D.  Appellee commences collateral proceedings to recover attorney's fees, costs, and sanctions .............................................. 6

    E.  Then, Appellee commences proceedings to certify minute order as final money judgment................................................. 6

    F.  The district court certifies its minute order as a final judgment; Ms. Clifford appeals to this Court ............................................ 8

SUMMARY OF ARGUMENT ............................................................... 8

STANDARD OF REVIEW ................................................................... 11

ARGUMENT ...................................................................................... 11

    I.     THE DISTRICT COURT'S MINUTE ORDER IS NOT A FINAL JUDGMENT ......................................................... 11

A.  The district court erred when it held that Fed. R. Civ. P. 58(a)(3) did not require a separate document for the fee, costs, and sanctions order ................................................................12

B.  The district court's minute order did not satisfy the separate document requirement .......................................................15

C.  Under this Court's longstanding precedent, the district court's civil minute order was not a final judgment .....................................16

D. The 150-day deadline in Fed. R. Civ. P. 58(c) *is not a categorical* rule that also applies to Rule 58(d) requests ................18

    1.  Appellee triggered Fed. R. Civ. P. 58(d) when he asked the district court to enter final judgment.........................................19

    2.  The text and ordinary rules of grammar make clear that the timing rules in Rule 58(c) do not apply to Rule 58(d) or (e)....21

    3.  The district court's Local Rules also show that Rule 58(d) is not subject to the iron-clad timing rules in Rule 58(c) .............26

II.   THE DISTRICT COURT ERRED CERTIFYING THE MINUTE ORDER AS A FINAL JUDGMENT ...................................................27

III.  THE ATTORNEY'S FEE AWARD IS UNREASONABLE ...............29

    1.  The district court improperly awarded Appellee attorney's fees for non-fee bearing components of the representation ...............29

    2.  The rates Appellee claimed and those that the district court awarded are unreasonable....................................................31

CONCLUSION ....................................................................................33

STATEMENT OF RELATED CASES................................................34

CERTIFICATE OF COMPLIANCE...................................................35

CERTIFICATE OF SERVICE ...........................................................36

ii

## <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*569 E. Cty. Boulevard LLC v. Backcountry Against the Dump, Inc.*,
  6 Cal. App. 5th 426 (2016).................................................................. 32

*Bankers Tr. Co. v. Mallis*,
  435 U.S. 381 (1978)................................................................. 14, 24

*Bayer CropScience v. Dow AgroSciences*,
  728 F.3d 1324 (Fed. Cir. 2013)............................................. 24

*Bostock v. Clayton Cnty.*,
  140 S. Ct. 1731 (2020) ..................................................... 1, 2, 25, 26

*Boyle v. United States*,
  556 U.S. 938 (2013) .............................................................. 26

*Burton v. Stevedoring Servs. of Am.*,
  196 F.3d 1070 (9th Cir. 1999).............................................. 13

*California Scents v. Surco Prods., Inc.*,
  406 F.3d 1102 (9th Cir. 2005).............................................. 11

*Camacho v. Bridgeport Fin., Inc.*,
  523 F.3d 973 (9th Cir. 2008)................................................ 31

*Carter v. Beverly Hills Sav. & Loan Ass'n*,
  884 F.2d 1186 (9th Cir. 1989).............................................. 28

*Casey v. Albertson, Inc.*,
  362 F.3d 1254 (9th Cir. 2004).............................................. 17

*Century Sur. Co. v. Prince*,
  782 F. App'x 553 (9th Cir. 2019) ......................................... 30

*Champion Produce, Inc. v. Ruby Robinson Co.*,
  342 F.3d 1016 (9th Cir. 2003).............................................. 13

*Clark v. City of Los Angeles*,
  803 F.2d 987 (9th Cir. 1986)................................................ 11

*Clifford v. Trump*,
  339 F. Supp. 3d 915 (C.D. Cal. 2018) ................................. 29

*Clifford v. Trump*,
   818 F. App'x 746 (9th Cir. 2020) ............................................................ 5, 6, 30

*Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*,
   259 F.3d 1186 (9th Cir. 2001) ...................................................................... 11, 27

*Cooper Ind., Inc. v. Aviall Servs., Inc.*,
   543 U.S. 157 (2004) ........................................................................... 15, 18, 25

*E. Bay Sanct. Conv. v. Trump*,
   950 F.3d 1242 (9th Cir. 2020) ..................................................................... 16

*El Apple I, Ltd. v. Olivas*,
   370 S.W.3d 757 (Tex. 2012) ....................................................................... 29, 31

*Fed. Trade Comm'n v. Credit Bureau Ctr., LLC*,
   937 F.3d 764 (7th Cir. 2019) ....................................................................... 26

*Gonzales v. Dep't of Homeland Sec.*,
   508 F.3d 1227 (9th Cir. 2007) ..................................................................... 18

*Hall v. U.S.D.A.*,
   984 F.3d 825 (9th Cir. 2020) ....................................................................... 24

*Harmston v. City & Cnty. of San Francisco*,
   627 F.3d 1273 (9th Cir. 2010) ..................................................................... 18, 25

*Heffernan v. City of Paterson, N.J.*,
   136 S.Ct. 1412 (2016) .................................................................................. 30

*Hillis v. Heineman*,
   626 F.3d 1014 (9th Cir. 2010) ..................................................................... 12

*In re Albert-Sheridan*,
   960 F.3d 1188 (9th Cir. 2020) ..................................................................... 9

*In re Maxitile, Inc.*,
   237 F. App'x 274 (9th Cir. 2007) ............................................................... 16

*In re Prof'l Air Traffic Controllers Org. (PATCO)*,
   699 F.2d 539 (D.C. Cir. 1983) ..................................................................... 28, 29

*Ingram v. Oroudjian*,
   647 F.3d 925 (9th Cir. 2011) ....................................................................... 31

*Kimble v. Marvel Entm't, LLC*,
   135 S.Ct. 2401 (2015) .................................................................................. 27

*Lopez v. Barr*,
   925 F.3d 396 (9th Cir. 2019) ....................................................................... 25

iv

*Marshall v. Webster*,
  54 Cal. App. 5th 275 (2020) ............................................................ 32

*Maslenjak v. United States*,
  137 S. Ct. 1918 (2017) ..................................................................... 27

*McLane Co. v. EEOC*,
  137 S. Ct. 1159 (2017) ..................................................................... 11

*Miller v. Gammie*,
  335 F.3d 889 (9th Cir. 2003).......................................................... 26

*Mireskandari v. Daily Mail & Gen. Tr. PLC*,
  2014 WL 12586434 (C.D. Cal. Nov. 7, 2014)................................... 32

*Murray v. Mayo Clinic*,
  934 F.3d 1101 (9th Cir. 2019)......................................................... 26

*Orr v. Plumb*,
  884 F.3d 923 (9th Cir. 2018)........................................................... 18

*Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No.*,
  426 F.3d 1162 (9th Cir. 2005).......................................................... 14

*Perez v. AC Roosevelt Food Corp.*,
  744 F.3d 39 (2d Cir. 2013).............................................................. 15

*Perrin v. United States*,
  444 U.S. 37 (1979) ........................................................................... 23

*Perry v. Sheet Metal Workers' Loc. No. 73*,
  585 F.3d 358 (7th Cir. 2009).............................................. 3, 19, 24

*Radio Tele. Espanola SA v. New World Ent'mt*,
  183 F.3d 922 (9th Cir. 1999)......................................................Passim

*Red v. Kraft Foods Inc.*,
  680 F. App'x 597 (9th Cir. 2017) .................................................. 32

*Royal Foods Co. v. RJR Hold., Inc.*,
  252 F.3d 1102 (9th Cir. 2001)......................................................... 19

*S.L. ex rel. Loof v. Upland Unified Sch. Dist.*,
  747 F.3d 1155 (9th Cir. 2014).......................................................... 15

*Sali v. Corona Reg'l Med. Ctr.*,
  884 F.3d 1218 (9th Cir. 2018).................................................. 12, 21

*SAS Inst., Inc. v. Iancu*,
  138 S. Ct. 1348 (2018) ..................................................................... 26

*Schneider v. Chertoff*,
   450 F.3d 944 (9th Cir. 2006) ................................................................ 13
*Solis v. Cnty. of Los Angeles*,
   514 F.3d 946 (9th Cir. 2008) ................................................................ 20
*Souratgar v. Lee Jen Fair*,
   818 F.3d 72 (2d. Cir. 2016) .................................................................. 13
*Stephanie-Cardona LLC v. Smith's Food & Drug Centers, Inc.*,
   476 F.3d 701 (9th Cir. 2007) ................................................................ 18
*Sullivan v. Abraham*,
   488 S.W.3d 294 (Tex. 2016) ................................................................ 29
*Sundel v. United States*,
   985 F.3d 1029 (D.C. Cir. 2021) ........................................................... 24
*Taggart v. Lorenzen*,
   139 S. Ct. 1795 (2019) ........................................................................ 27
*United States v. Menasche*,
   348 U.S. 528 (1955) ............................................................................. 21
*United States v. Ron Pair Enter., Inc.*,
   489 U.S. 235 (1989) ...................................................................... 10, 22
*United States v. Watkins*,
   278 F.3d 961 (9th Cir. 2002) .......................................................... 13, 14
*Welch v. Metro. Life Ins. Co.*,
   480 F.3d 942 (9th Cir. 2007) ................................................................ 31
*Yates v. United States*,
   574 U.S. 528 (2015) ............................................................................. 22

## Statutes

28 U.S.C. §1291 ......................................................................................... 4
28 U.S.C. §1332 ......................................................................................... 4
28 U.S.C. §1963 ................................................................................. Passim
42 U.S.C. §1983 ......................................................................................... 7
Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a)(1) .............................. 30

Rules

Fed. R. App. P. 3 & 4..............................................................................20
Fed. R. App. P. 4...................................................................................25
Fed. R. Civ. P. 5(d)...............................................................................21
Fed. R. Civ. P. 12(b)(6).........................................................................31
Fed. R. Civ. P. 38 (b)............................................................................20
Fed. R. Civ. P. 54(a).............................................................................29
Fed. R. Civ. P. 58.............................................................................Passim
Fed. R. Civ. P. 58(a).........................................................................Passim
Fed. R. Civ. P. 58(a)(3)......................................................................Passim
Fed. R. Civ. P. 58(a)-(c)........................................................................19
Fed. R. Civ. P. 58(b)............................................................................22
Fed. R. Civ. P. 58(c).........................................................................Passim
Fed. R. Civ. P. 58(d).........................................................................Passim
Fed. R. Civ. P. 60(a)..............................................................................7
Fed. R. Civ. P. 79(a).............................................................................22
L.R. 5 (C.D. Cal.) ................................................................................21
L.R. 58 (C.D. Cal.) .........................................................................Passim

Other Authorities

73 Am. Jur. 2d *Statutes* §143 .............................................................22
Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal
Texts* (2012)..................................................................................14, 25
*Black's Law Dictionary* (10th ed. 2014)................................................23
Bryan A. Garner, *Garner's Modern English Usage* (4th ed. 2016) .................2, 23
The Chicago Manual of Style (17th ed. 2017).......................................23
*The Random House Dictionary of the English Language*
    (2d ed. unabridged 1983) ..............................................................23
*Webster's New World College Dictionary* (5th ed. 2018) ...............19, 23
William N. Eskridge, Jr., *Interpreting Law: A Primer On How To Read Statutes
And The Constitution* (2016)..............................................................26

## **INTRODUCTION**

The Supreme Court has told us that when reading laws, "small gestures can have unexpected consequences." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1737 (2020). This brief centers on text and the unexpected consequences of small gestures by this Court's precedent, the drafters of Fed. R. Civ. P. 58, and Appellee.

Begin with precedent. This Court has made clear that Local Rules "clarify what cannot constitute an entry of judgment in the Central District under [Fed. R. Civ. P.] Rules 58 and 79(a)." *Radio Tele. Espanola SA v. New World Ent'mt*, 183 F.3d 922, 930-932 (9th Cir. 1999). The C.D. of California's Local Rules state that unless the judge specifically says so, a minute order does not automatically become a judgment. L.R. 58-6 (C.D. Cal.). Here, the judge never stated that the minute order awarding Appellee attorney's fees, costs, and sanctions is a final judgment. Enter the first small gesture: *this Court has never overruled Radio Television Espanola*. That case is controlling: the minute order here is not a judgment.

Consider next the small gesture by the drafters of Fed. R. Civ. P. 58. Rule 58 has five parts, (a) through (e). Each contains freestanding rules about the entry of judgments. Part (a) speaks to those orders that do not require a separate judgment. Then, part (b) lays out rules for when a court or the court clerk should enter judgment. The next rule, part (c), outlines a default rule when the court or clerk fails to enter judgment, *as a matter of course*. Under that rule, an order becomes a

1

judgment when "150 days have run from the entry" on the docket. But part (c) should give the reader pause. The drafters prefaced part (c) with a pointing *word*—"*these* rules * * * *"" In English grammar, pointing words like "these" or "those" generally refer to something already mentioned. Bryan A. Garner, *Garner's Modern English Usage* 706 (4th ed. 2016). That rule is as old as the English language itself.

Now factor in Appellee's small gesture. It involves Rule 58(d). That rule allows a party to request a court to affirmatively enter judgment. Appellee triggered Rule 58(d) when he asked the court to *affirmatively* enter final judgment. That request is still pending.

Together, those gestures invite the first impression question here: Does the deictic or pointing word "*these*" next to "rules" in Fed. R. Civ. P. 58(c) modify that noun to only refer to the *antecedent* freestanding rules in subsections (a) & (b)? Or does "these" instead refer to all the parts in Rule 58, including a Rule 58 (d) request for entry of judgment? Rules 58(d) & (e) contain no time limit, and they do not refer at all to Rule 58(c). Considering the text, context, the rules of construction and grammar, whether intended or not, the time limit in Rule 58(c) is inapplicable to Rules 58(d) &(e). After all, "the *limits of the drafters' imagination* supply no reason to ignore *the law's demands*." *Bostock*, 140 S. Ct. at 1737 (emphasis added).

What the controlling text and context make clear, the committee notes confirm. Those notes state the 150-day default rule *is not absolute*. *See* Adv. Comm.

Notes to 2002 Amend. (addressing the 150-day rule, the notes state that if an unchecked application of that rule *"would defeat* the *purpose of another rule,* it should be *disregarded"*) (emphasis added); *see also* Rule 58(c) (referring to the plural form "these rules," meaning Rule 58 contains multiple rules). Enter Rule 58(d). That rule removes uncertainty in appeal time. When a court issues the requested judgment under Rule 58(d), it clarifies when the appeal clock begins. *See Perry v. Sheet Metal Workers' Loc. No. 73*, 585 F.3d 358, 362 (7th Cir. 2009).

That conclusion bleeds into the next issue on appeal. Assuming that we are correct about the unexpected consequences of a pending Rule 58(d) request, was the district court correct to certify the minute order as a registrable final judgment under 28 U.S.C. §1963? The answer, we contend, is "no." That statute requires a final judgment, not a minute order. And it also precludes registration when the time for appeal has not lapsed, unless the district court (for good cause) orders registration. The court never found good cause. Thus, registration was improper.

Finally, on the merits of the attorney's fees, costs, and sanctions awards, the district court abused its discretion. That court rewarded Appellee's double-dipping by awarding fees on a non-fee-bearing portion of Appellee's motion to dismiss. The district court also erred when it paid scant regard to the obvious overstaffing and billing. Thus, much of the award represents straightforward duplicative effort. This Court should reverse and remand.

3

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §1332. This Court has jurisdiction under 28 U.S.C. §1291. The notice of appeal is timely. ER-001-018. Appellee moved to dismiss the appeal; but the motions panel denied Appellee's motion. *See* Doc. 18 (April 8, 2021).

## ISSUES PRESENTED

1. Fed. R. Civ. P. 58(a)(3) only exempts an order for "attorney's fees" from the separate document requirement. The order below awarded Appellee attorney's fees, *costs*, *and sanctions*. Did the court err in holding that an order broader than what Rule 58(a)(3) allows is not subject to the separate document requirement?

2. In *Radio Tele. Espanola SA v. New World Ent'mt*, 183 F.3d 922 (9th Cir. 1999), this Court, construing Fed. R. Civ. P. 58 and 79 and the Local Rules of this same district court below, held that a federal court only issues a final judgment when it has issued a separate order apart from the merits. Did the district court err in disregarding *Radio Television Espanola*?

3. Is a Fed. R. Civ. P. 58(d) request to a court for entry of judgment also subject to the 150-day default rule in Fed. R. Civ. P. 58(c)?

4. Assuming that a Rule 58(d) request to a court to enter judgment is not subject to the 150-day default rule Fed. R. Civ. P. 58(c), did the court err to certify the minute order as a registrable final judgment under 28 U.S.C. §1963?

4

5. Whether the district court abused its discretion in awarding the attorney's fees, costs, and sanctions.

## STATEMENT OF THE CASE

### A. Stephanie Clifford sues Donald J. Trump for defamation

1.    This Court is familiar with this case. *See Clifford v. Trump*, 818 F. App'x 746 (9th Cir. 2020). After Appellant's interview with *In Touch Magazine* about her affair with Appellee Donald J. Trump, a stranger threatened her and her child in 2011. Ms. Clifford released publicly a sketch of the man who threatened her. But the next day, Mr. Trump accused Ms. Clifford of making up the whole thing. Tweeting to millions of his followers worldwide, Appellee claimed: "A sketch years later about a nonexistent man. A total con job, playing the Fake News Media for Fools (but they know it)!" Clifford sued him for defamation. *Id.* at 748-749.

### B. The proceedings on the merits in the district court

2.    After Appellant sued Appellee Donald J. Trump for a defamatory tweet, he moved to dismiss the Complaint, coupled with a motion to strike, based on the Texas Citizens' Participation Act (TCPA), a Texas anti-SLAPP statute. *Clifford*, 818 F. App'x at 747-748. Appellee asserted that Texas substantive law applied to the lawsuit. As a result, Appellee claimed, the Texas anti-SLAPP statute—the TCPA—applied. Under that statute, a defendant can attain relief by showing that the targeted speech is a matter of public concern. When a defendant shows that, the statute

5

mandates dismissal and attorney's fees, sanctions, and costs. *Id.* at 747. Clifford opposed Appellee's motion. *Clifford*, 818 F. App'x at 747-748.

> **C.    The district court issues its rulings on the merits; this Court affirms on appeal**

3.      The district court agreed with Mr. Trump's arguments and dismissed Appellant's lawsuit. The district court also refused leave to amend. This Court affirmed. *See Clifford*, 818 F. App'x at 747-751.

> **D.    Appellee commences collateral proceedings to recover attorney's fees, costs, and sanctions**

4.      While Ms. Clifford's merits appeal was pending before this Court, Mr. Trump moved for attorney's fees, sanctions, and costs under the Texas anti-SLAPP statute. The district court entered an order titled "CIVIL MINUTES - GENERAL" in which it awarded Mr. Trump $293,052.33 in attorney's fees and costs. ER-103-111. Then, Mr. Trump requested the district court to affirmatively enter a final judgment. ER-138-142. That request is still pending; the district court has never entered Mr. Trump's requested proposed final judgment. *Id.*

> **E.    Then, Appellee commences proceedings to certify minute order as final money judgment**

5.      During the time the merits appeal was pending, Ms. Clifford obtained a settlement in an unrelated matter pending in the Southern District of Ohio for a violation of her civil rights under 42 U.S.C. §1983. Ms. Clifford had sued the City of Columbus and its individual officers for false arrest. The defendants in that case

settled with Ms. Clifford for $450,000.00. The settlement and its terms are a matter of public record. *See* ER-036.

6.     As soon as word of the settlement spread, it peaked Mr. Trump's interest. He immediately moved the court clerk of the Central District of California to certify the attorney's fees, costs, and sanctions court minute. *See* ER-036.

7.     Ms. Clifford opposed Mr. Trump's certification request. She filed a motion with the district challenging the propriety of the district court clerk's certification of the civil minute fee award. ER-115-186.

8.     After Ms. Clifford filed a motion with the district court challenging the court clerk's certification of the minute order, the clerk rescinded her actions. The court clerk issued a clarification notice that made clear that the order she certified was not a judgment and that no party could register it in a foreign jurisdiction under 28 U.S.C. §1963. The district court issued an order finding the motion moot. ER-112-114.

Displeased with the district court and its clerk's actions, Mr. Trump moved under Fed. R. Civ. P. 60(a) and 28 U.S.C. §1963 seeking relief two-fold:

- an order vacating the court clerk's rescission of her certification of the minute order; and

- a district court order certifying the minute order for registration in another district under 28 U.S.C. §1963's good cause provision.

ER-047-111.

10.     Ms. Clifford again opposed Mr. Trump's motion. She argued that under longstanding Ninth Circuit precedent, the district court's Local Rules, and Fed. R. Civ. P. 58, the minute order was not a final judgment. ER-026-046. Since there was no final order, there was no judgment for the court to certify. *Id.*

### F.     The district court certifies its minute order as a final judgment; Ms. Clifford appeals to this Court

11.     The district court granted Mr. Trump's motion to certify the minute order. The court held that its minute order was a final judgment, Fed. R. Civ. P. 58(a) did not require a separate document, and there was good cause to certify the order. The district court also held that the court clerk was wrong to have rescinded her certification of the minute order. ER-016-018.

12.     Appellant filed this appeal the same day. ER-001-015.

13.     Appellee moved to dismiss the appeal. *See* Doc. 8. Appellant opposed the motion. Doc. 15-1. The motions panel denied Appellee's motion. *See* Doc. 18.

### <u>SUMMARY OF ARGUMENT</u>

This Court should reverse for five reasons.

*First*, the district court was wrong to treat the minute order awarding Appellee attorney's fees, costs, and sanctions as one that did not require a separate document. The clear text of Fed. R. Civ. P. 58(a) only exempts from the separate document requirement an order that awards "attorney fees" only. Nothing else. Federal courts do not rewrite clear statutes to add or take away words.

*Second*, because the district court should have entered a separate document, but failed to do so, there was no final order. That is true under the Local Rules of the Central District of California. *See, e.g.*, L.R. 58-6 (C.D. Cal. Dec. 1, 2020).[1] And it is equally true under this Court's precedent that upheld the validity of those Local Rules. *Radio Tele. Espanola, 183* F.3d at 930-932. Until the district court judge specifically gives notice to the parties that it is entering a final judgment, minute orders do not automatically crystalize into final judgments. *Id.* Under circuit precedent, until the U.S. Supreme Court or the en banc court overrules *Radio Television Espanola,* it remains binding precedent. *See In re Albert-Sheridan*, 960 F.3d 1188, 1192–93 (9th Cir. 2020) ("[I]n the absence of intervening Supreme Court precedent, one panel cannot overturn another panel, regardless of how wrong the earlier panel decision may seem to be.").

*Third*, even if this panel overruled *Radio Television Espanola sub silentio*, there is still a pending Fed. R. Civ. P. 58(d) request for entry of judgment before the district court. This Court has held that when a district court (or its clerk) fails to enter a separate judgment, *as a matter of course*, then the *default rule* is that judgment issues 150 days from the date of entry on the docket. This Court has never addressed whether a Rule 58(d) *affirmative request* for entry of judgment—that is present

---

[1] The Central District amended its Local Rules during this appeal. As a result, while the Local Rules that were in place during the early posture of this case no longer exist, the current rules are similar.

9

here—is also subject to the 150-day default rule in Rule 58(c). Looking at the text and context of Rule 58(c) as well as the rules of grammar, the default rule is not iron-clad. It does not apply to all orders for relief. Indeed, the drafters of Rule 58(c) placed it (and its default rules) in between two other sets of rules: Rules 58(a)&(b) and Rules (d)&(e). The prefatory language to Rule 58(c) states that the default rules apply to "*these* rules." But which rules? The antecedent rules (Rule 58(a)&(b))? The later rules (Rule 58(d)&(e))? Or all the rules in Rule 58? Ordinary meaning and rules of grammar shed some light. *See generally United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241 (1989) (explaining that courts should consider "the grammatical structure of the statute" in statutory interpretation). Ordinarily, the word "these" is *a deictic* or a pointing *word.* Those kinds of words generally only refer to their *antecedents*—things mentioned before. That means Rule 58(a)&(b). Thus, a Rule 58(d) request is effective only when a court issues it, not after 150 days.

*Fourth*, as there is only a civil minute order in place, without a final judgment, the district court was wrong to certify that non-final order for registration in another federal district under 28 U.S.C. §1963. That statute requires a final judgment.

*Fifth*, on the merits of the district court's attorney's fees award, the district court abused its discretion. It misapplied the law. The anti-SLAPP statute at issue only awards attorney's fees for anti-SLAPP motions. But the district court awarded fees for non-fee-bearing motions. The district court also awarded an unreasonable

fee because both Appellee's rates and time spent on this case were excessive and unreasonable. This Court should reverse.

## STANDARD OF REVIEW

This Court reviews questions of rule interpretation *de novo*. *California Scents v. Surco Prods., Inc.*, 406 F.3d 1102, 1105 (9th Cir. 2005).

This Court reviews a district court's decision to certify an order for registration for an abuse of discretion. *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1197 (9th Cir. 2001). Even then, the abuse of discretion standard of review "does not shelter a district court that makes an error of law, because [a] district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law." *McLane Co. v. EEOC*, 137 S. Ct. 1159, 1168 n. 3 (2017) (cleaned up).

Questions about the quantum of attorney's fees are subject to an abuse of discretion review. *Clark v. City of Los Angeles*, 803 F.2d 987, 990 (9th Cir. 1986).

## ARGUMENT

### I.   THE DISTRICT COURT'S MINUTE ORDER IS NOT A FINAL JUDGMENT

Before this Court can reach the ultimate question presented in this first argument, this analysis must unpack some necessary preliminary matters. First, the analysis will show that the order at issue was subject to the separate document requirement. Next, considering what we contend is controlling precedent, the

11

analysis will show that the district court's minute order did not fill the bill. Then, we argue that Appellee triggered Fed. R. Civ. P. 58(d)—a provision for *affirmatively* requesting *an affirmative act* from a district court. Finally, bringing it altogether, we address whether a Fed. R. Civ. P. 58(d) request (like Rule 58(e)) is subject to Rule 58(c)'s timing rules. Looking at the text and context, we contend it is not. Since that request is pending, this appeal is not stale.

### A. The district court erred when it held that Fed. R. Civ. P. 58(a)(3) did not require a separate document for the fee, costs, and sanctions order

Fed. R. Civ. P. 58 provides that a court should generally issue a "separate document" reflecting its judgment unless for an order "disposing of a motion" for "attorney fees under Rule 54." Fed. R. Civ. P. 58(a)(3). The first question presented: does the district court's minute order that awarded attorney's fees, costs, and sanctions fit within Rule 58(a)(3)'s no-separate-document exception? Based on the clear text of the rule and ordinary rules of construction, it does not.

We begin with the text of the rule and then apply ordinary rules of construction. Principles of construction apply to the federal rules. *See Hillis v. Heineman*, 626 F.3d 1014, 1017 (9th Cir. 2010); *Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1221 (9th Cir. 2018) ("When interpreting the scope of a Federal Rule of Civil Procedure, we begin with the text."). As noted, Rule 58 provides that a district court should generally issue a "separate document" reflecting its judgment unless

for an order "disposing of a motion" for "attorney's fees under Rule 54." Fed. R. Civ. P. 58(a)(3). Nothing else.

Established cannons of construction also confirm this. Indeed, "it is a well-established maxim of statutory interpretation that the expression of one thing is the exclusion of another." *Schneider v. Chertoff*, 450 F.3d 944, 954 (9th Cir. 2006). If, as here, the at issue rule "is clear and unambiguous, that is the end of the matter." *Burton v. Stevedoring Servs. of Am.*, 196 F.3d 1070, 1072 (9th Cir. 1999). This Court cannot add words to a clear rule. *United States v. Watkins*, 278 F.3d 961, 965 (9th Cir. 2002) ("[A] court should not read words into a [rule] that are not there.").

The minute order at issue does not fit within Rule 58(a)(3)'s no–separate–document exception. That order awarded Mr. Trump three classes of monetary exactions: (1) attorney's fees, (2) costs, and (3) sanctions. ER-103-111. This Court has long settled that under the Federal Rules of Civil Procedure, costs, and attorney's fees are two separate exactions; they are not interchangeable. *See Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1030 (9th Cir. 2003). That matters here because other federal courts have held that when, as here, an order disposes and awards more than attorney's fees, it is broader than what Rule 58(a)(3) allows. *Souratgar v. Lee Jen Fair*, 818 F.3d 72, 78 (2d. Cir. 2016). That is because, by its clear terms, Rule 58(a)(3) only applies to orders for "attorney's fees under Rule 54." *Id.* Nothing else.

That strict reading of the rule reflects the Supreme Court's ruling that Rule 58 should be "mechanically applied." *Bankers Tr. Co. v. Mallis*, 435 U.S. 381, 386 (1978). And that reading also tracks a longstanding judicial review principle: that "a court should not read words into a [rule] that are not there." *Watkins*, 278 F.3d at 965; Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 93 (2012) ("[A] matter not covered is to be treated as not covered.").

*Souratgar* reflects a faithful application of these principles. There, the district court ordered the losing party to pay not only attorney's fees but also expenses of transcription, lodging, travel, a fact witness, and reimbursable expenses under a federal statute. In short, since the monetary award in that case was more than just an "attorney fees" order, the Second Circuit reasoned, it was broader than what Rule 58(a)(3) speaks to. *Souratgar*, 818 F.3d at 78. Similarly, here, because the district court's order awarded Appellee more than what Rule 58(a)(3) permits, that order is outside the no-separate-document exception. If this Court were to judicially rewrite and broaden Rule 58(a)(3) to permit the order at issue (with all its add-ons), it would evoke "the thud of square pegs being pounded into round holes." *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 426 F.3d 1162, 1193 (9th Cir. 2005) (Kozinski, J., concurring), *rev'd and remanded*, 551 U.S. 701 (2007), *and vacated*, 498 F.3d 1059 (9th Cir. 2007). To hold otherwise would be a straightforward error. *Souratgar*, 818 F.3d at 78.

14

We expect that Appellee will argue that *S.L. ex rel. Loof v. Upland Unified Sch. Dist.*, 747 F.3d 1155 (9th Cir. 2014) and *Perez v. AC Roosevelt Food Corp.*, 744 F.3d 39 (2d Cir. 2013), foreclose our arguments. Those cases, however, are not controlling because they are distinguishable. As the Second Circuit noted in distinguishing both those cases in *Souratgar*: those two cases addressed orders that *strictly* awarded *only* attorney's fees. There were no sanctions or costs in those orders, like we have here. Those sanctions and costs add-ons (present here and in *Souratgar*) but not in *S.L. ex rel. Loof* and *Perez*, make those latter cases inapplicable. In other words, those two cases (*S.L. ex rel. Loof* and *Perez*) did not address or speak to an order like we have here, which is broader than what Rule 58(a)(3) allows. That matters because a case is not precedent for questions or scenarios it did not consider. *See Cooper Ind., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) ("*Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon*, are not to be considered as having been so decided as to constitute precedents.") (emphasis added). Thus, Rule 58(a)(3) required a separate judgment.

## B. The district court's minute order did not satisfy the separate document requirement

This Court has long held that courts in this circuit should read Rules 58 and 79(a) together. *Radio Tele.*, 183 F.3d at 930-932. When read together, this Court's precedents hold, an order satisfies the separate document requirement only when:

(1) it is self-contained and separate from the opinion; (2) the order notes the relief granted; and (3) the order omits the district court's reasons for disposing of the parties' claims. *See In re Maxitile, Inc.*, 237 F. App'x 274, 275 (9th Cir. 2007).

Applying those standards here, the at-issue minute order does not satisfy the separate document requirement. Indeed, Appellee conceded below that the district court's minute order "was a detailed written order." ER-060. That order had citation to authority and reasons for disposing of the applications. *Id.* Thus, it was not a separate document that reflects a separate judgment. *In re Maxitile*, 237 F. App'x at 275. The at-issue minute order does not satisfy the separate document requirement.

### C. Under this Court's longstanding precedent, the district court's civil minute order was not a final judgment

This Court has long held that "Civil Minutes General" or "minute order[s]" (like the one at issue) are not judgments. *Radio Tele.*, 183 F.3d at 930-932. Until the district court enters a separate document that satisfies both Rule 58 and 79, the appeal time does not begin. *Id.* This Court has also held that Local Rules "clarify what cannot constitute an entry of judgment in the Central District under [Fed. R. Civ. P.] Rules 58 and 79(a)." That precedent resolves this case.

The district court, however, sidestepped *Radio Television Espanola,* even after we brought it to its attention. ER-039-042. That was error. *See E. Bay Sanct. Conv. v. Trump*, 950 F.3d 1242, 1261 (9th Cir. 2020) ("Published decisions of this court become law of the circuit, which is binding authority *that we and district courts*

16

*must follow until overruled*.") (emphasis added). This Court has never overruled *Radio Television Espanola*.

In fact, in *Casey v. Albertson, Inc.*, 362 F.3d 1254 (9th Cir. 2004), this Court explained that *Radio Television Espanola*'s requirement that—"[o]nly when both" Rule 58 and Rule 79(a) are satisfied is there a judgment—is still good law. *See Casey*, 362 F.3d at 1258. That is because, as this Court explained, it now applies *Radio Television* (and similar cases) "to salvage" cases like this one, where "the appealability of a case where it may have been unclear in the district court which document was the final judgment." *Id.* at 1259.

The district court's current Local Rules interpreting Rule 58 also support Appellant's position. Those rules, which this Court applied approvingly in *Radio Television Espanola*, state that a "[n]otation in the civil docket of entry of *a memorandum of decision, an opinion of the Court*, or a minute order of the Clerk *shall not constitute entry of judgment* pursuant to Fed. R. Civ. P. 58 and 79(a) *unless specifically ordered by the judge*." L.R. 58-6 (C.D. Cal.) (emphasis added); *Radio Tele.*, 183 F.3d at 930 (those Local Rules "clarify what cannot constitute an entry of judgment in the Central District under Rules 58 and 79(a).") (cleaned up).

The law of the circuit doctrine requires this Court to apply *Radio Television Espanola* and to "stand by yesterday's decisions—even when doing so means sticking to" decisions others might perceive as "wrong." *East Bay Sanctuary*, 950

17

F.3d at 1261 (cleaned up). Appellee urged the district court below to abandon *Radio Television Espanola*. *See, e.g.*, ER-059-60. The district court erred in sidestepping precedent. This Court should reverse the district court.

### D. The 150-day deadline in Fed. R. Civ. P. 58(c) *is not a categorical rule that also applies to Rule 58(d) requests*

The district court held that Rule 58(c) provides that if a separate judgment is required, courts should consider it entered when 150 days have run from its entry on the docket. ER-017-018. But the court did not consider the import of Rule 58(d)—a provision that allows any party to request that a federal court *affirmatively* enter a judgment. Appellee triggered Rule 58(d) in this case. That matters here because *none of the cases* the district court considered, or circuit precedent that Appellee cited below, *litigated* the interplay of Rule 58(c)&(d), *especially when a party files a Rule 58(d) request. E.g., Stephanie-Cardona LLC v. Smith's Food & Drug Centers, Inc.*, 476 F.3d 701, 703–04 (9th Cir. 2007) (outlining only the import of Fed. R. Civ. P. 58(a)-(c)); *accord Harmston v. City & Cnty. of San Francisco*, 627 F.3d 1273, 1279-1281 (9th Cir. 2010); *Orr v. Plumb*, 884 F.3d 923, 931-32 (9th Cir. 2018) (suggesting the possibility of filing a Rule 58(d) request—but none was filed in that case).

That makes all the difference here: After all, "[q]uestions which merely lurk in the record, *neither brought to the attention of the court nor ruled upon*, are not to be considered as *having been so decided as to constitute precedents*." *Cooper Ind.*, 543 U.S. at 170 (emphasis added); *Gonzales v. Dep't of Homeland Sec.*, 508 F.3d

18

1227, 1234–1235 (9th Cir. 2007) (one panel's unstated assumptions on non-litigated issues are not precedential holdings).

Thus, is a Rule 58(d) request for judgment also subject to the 150-day deadline in Rule 58(c)? This section considers the issues raised as follows: (1) did Appellee trigger Rule 58(d) below? If yes, then (2) is a Rule 58(d) request to a court for it to affirmatively enter judgment also subject to the 150-day default rule in 58(c)?

When this Court considers the text and context of Rule 58 and rules of grammar, the answer is "no." The time limit in Rule 58(c) is inapplicable to a Rule 58(d) request. Instead, Rule 58(d) requests remove the uncertainty about timing. Rule 58(d) injects certainty. *See Perry*, 585 F.3d at 362. When a court issues the requested judgment, that is when the appeal clock begins. *See generally id.*

### 1. Appellee triggered Fed. R. Civ. P. 58(d) when he asked the district court to enter final judgment

Under Fed. R. Civ. P. 58(d), a "party *may request* that judgment be set out in a separate document as required by Rule 58(a)." Fed. R. Civ. P. 58(d) (emphasis added). Rule 58 does not define "request," so this Court should give that term its plain meaning. *Royal Foods Co. v. RJR Hold., Inc.*, 252 F.3d 1102, 1106 (9th Cir. 2001). Request means "*asking*" for or making a "*demand*" for something. *See Webster's New World College Dictionary* 1234 (5th ed. 2018). Either suffices. *Id.*

As applied here, Appellee triggered Rule 58(d) when he filed documents with the district court requesting that it enter a final judgment. To be sure, Appellee

lodged a proposed final judgment with the district court. ER-138-142. Lodging documents with federal courts is not an empty ritual. A notice of appeal lodged with the district court clerk, for example, is *a formal request* to an appellate court to exercise its review jurisdiction over a designated order and for the district court clerk to prepare a record for appeal. *See, e.g.*, Fed. R. App. P. 3 & 4. No formal motion is necessary. Likewise, affixing "Jury Trial Demanded" on a complaint (without a formal motion) is enough under the Federal Rules of Civil Procedure *to formally request or demand* a jury trial. *See, e.g.*, Fed. R. Civ. P. 38 (b) ("a party may demand a jury trial by * * * filing the demand"); Rule 81; *Solis v. Cnty. of Los Angeles*, 514 F.3d 946, 954 (9th Cir. 2008) (jury "demand" properly made when demanded "in both the caption and at the end of * * * pleading."). Given these examples, similarly, Appellee's lodging of his proposed final judgment was *a request or demand* to the district court to enter a judgment that did not yet exist.

The district court's Local Rules also confirm as much. Under those rules, lodging proposed orders and documents "means to deliver [them] to the Clerk." L.R. 5-1 (C.D. Cal.). Delivering documents ordinarily means to electronically file those documents. *Id.*; *see also* Fed. R. Civ. P. 5(d). Indeed, the district court's Local Rules require movants to file proposed orders electronically with the court's CM/ECF System. *See* L.R. 5-4.1 (C.D. Cal.). In short, Appellee triggered Rule 58(d) when he filed papers with the district court asking it to enter final judgment.

### 2. The text and ordinary rules of grammar make clear that the timing rules in Rule 58(c) do not apply to Rule 58(d) or (e)

"[W]e begin with the text." *Sali*, 884 F.3d at 1221. Fed. R. Civ. P. 58 has five clauses, (a) to (e). Each of the clauses—judged by the headings, wording, and punctuation—contains freestanding rules about entry of judgments. Viewed in that sense, clause (a) lists those orders that do not require a separate judgment. *See* Rule 58(a). The next part outlines *default* rules when a district court or its clerk should, *as a matter of course*, enter judgment after proceedings. *See* Rule 58(b).

Then there are the critical default rules in Rule 58(c). In analyzing that provision, like any other federal law, "[i]t is our duty *to give effect*, if possible, to *every clause and word* of a [rule]." *United States v. Menasche*, 348 U.S. 528, 538–539 (1955) (cleaned up) (emphasis added). The drafters of Fed. R. Civ. P. 58 prefaced the default rules in subsection (c) with the phrase "[f]or the purposes of *these rules*." *Id.* (emphasis added). Rule 58(c) has default time entry rules for judgments. The first part, Rule 58(c)(1), tacitly relates back to Rule 58(a) by referencing orders that Rule 58(a) requires a separate document. For those orders that require a separate document, Rule 58(c)(1) states that a judgment is effective when the district court enters it on the civil docket in compliance with Fed. R. Civ. P. 79(a). *See* Rule 58(c)(1). For those class of orders that Rule 58(a) requires a separate document, subpart (2) of Rule 58(c) provides that a judgment is final when

a district court or clerk enters the separate document on the docket or when 150-days have lapsed since the entry. *See* Rule 58(c)(2).

Now add to the mix Rule 58(d), a rule onto its own. That rule states that a party can request the district court to enter final judgment. *Id.* (citing Fed. R. Civ. P. 58(a)). Rule 58(d) is clear rule. As noted, Rule 58(d), like Rule 58(e), contains no time limit, and it does not refer at all to Rule 58 (c).

When we give meaning and grammatical effect to each word in Fed. R. Civ. P. 58(c) as we must, *see Menasche*, 348 U.S. at 538–539, that necessarily invites the question presented: does the placement of "*these*" next to the plural "rules" in Fed. R. Civ. P. 58(c) modify that word to refer to the *antecedent* freestanding rules in subsections (a) & (b)? Or does "these" instead refer to all the subsections in Rule 58, including subsection (d) and (e)? *See generally Ron Pair Enter., Inc.*, 489 U.S. at 241 (explaining that courts should consider "the grammatical structure of the [law]" in statutory interpretation).

Considering Rule 58's text, context, and grammatical structure shows that the word "these" limits the default rules in Rule 58(c) to what was referred to before— *i.e.*, Rules 58(a)&(b). The placement of the word and the overall context confirm as much. *See generally Yates v. United States*, 574 U.S. 528, 537 (2015) (plurality opinion) ("In law as in life, * * * words [] placed in different contexts, sometimes mean different things."). Begin with that the words "these" and "rules" are the plural

22

forms of "this" and "rule." *The Random House Dictionary of the English Language* 1680, 1973 (2d ed. unabridged 1983); *Perrin v. United States,* 444 U.S. 37, 42 (1979) ("[W]ords will be interpreted as taking their ordinary, contemporary, common meaning."). The word "these" is a pronoun when it replaces a noun. *The Chicago Manual of Style* §5.49, at 241 (17th ed. 2017). But when, as in Rule 58(c), a pronoun describes a noun, it functions as a demonstrative adjective. *See generally* Bryan A. Garner, *Garner's Modern English Usage* at 19.

Ordinarily, the words "these," "those," "that," "this," or "it," are deictic or pointing words. *See* B. Garner, *Garner's Modern English Usage* at 706. The key feature of pointing words is that they generally "point directly *at an antecedent*." *Id.*; *Webster's New World College Dictionary* at 1507 (the word "these" refers to "the * * * *thing mentioned or understood*.") (emphasis added); *Black's Law Dictionary* 1532-1533 (10th ed. 2014) ("[D]emonstrative adjectives *generally refer*[] to the nearest reasonable *antecedent*.") (emphasis added). Singular deictics like "this" or "that" point to singular antecedents; plural deictics "these" refer to their plural antecedents. Garner, *Garner's Modern English Usage* at 706; cf. *The Chicago Manual of Style* §5.52, at 243 ("these or those [are] for * * * plural antecedent[s]"). In any event, this Court has clarified that when, as in Rule 58(c), the antecedent is/are (a) whole phrase(s), the correct rule is "the nearest-reasonable-referent canon" that,

23

in essence, functions "the same" as the last antecedent rule. *See Hall v. U.S.D.A*., 984 F.3d 825, 837-838 (9th Cir. 2020). That rule applies here.

Applying that analysis here, the default rules in Rule 58(c) apply to things already mentioned. We begin with noting that the keyword in our analysis is an adjective (these). *See* Fed. R. Civ. P. 58(c). Under longstanding grammar rules, generally adjectives suggest a narrowing of the broader class identified by the noun. *See Sundel v. United States*, 985 F.3d 1029, 1032 (D.C. Cir. 2021); *Bayer CropScience v. Dow AgroSciences*, 728 F.3d 1324, 1329 (Fed. Cir. 2013) ("the adjective suggest[s] a narrowing of the broader class identified by the noun"). Thus, as applied to Rule 58(c), the adjective "these" in that provision serves to modify the noun "rules" to refer to less than the entire class of rules in Rule 58. *See id.*

That makes perfect sense. Preceding Rule 58(c) are two freestanding provisions: Rules 58(a)&(b). Those rules speak to orders that either do not require a separate judgment or those that do, but which the district court or the court clerk should, *as a matter of course*, enter judgment. For those rules, Rule 58(c) provides the timing rules. But for Rule 58(d), that requires an *affirmative* demand for a judgment, any attendant deadlines begin when the court *affirmatively* acts. *See generally Perry*, 585 F.3d at 362; *see also generally Bankers Tr.*, 435 U.S. at 386 (courts should apply Rule 58 "to simplify and *make certain the matter of appealability* * * * The rule should be interpreted to *prevent loss of the right of*

24

*appeal*, *not to facilitate loss*.") (emphasis added).[2] And, as noted, that reading of Rule 58(c) reflects sound grammar and ordinary meaning. *See* Antonin Scalia & Bryan A. Garner, *Reading Law* 140 (2012) ("Words are to be given the meaning that proper grammar and usage would assign them.").

We next address what is potentially adverse authority. Moving past Fed. R. Civ. P. 58's text and context, this Court has, however, suggested an atextual rule: That Congress intended the 2002 Amendments "to avoid giving parties forever to appeal." *Harmston*, 627 F.3d at 1280, (cleaned up) (quoting the Advisory Committee Notes to Fed. R. App. P. 4).[3] That atextual rationale, besides contradicting the textual and contextual analysis we have urged here, conflicts with recent Supreme Court precedent's mode of analysis. As the Supreme Court has recently made clear, when as here, "the express terms of a [law] *give us one answer* and extratextual considerations *suggest another*, *it's no contest. Only the written word is the law, and all persons are entitled to its benefit*." *Bostock*, 140 S. Ct. at 1737 (emphasis added). Indeed, whether intended or not, text and context drive the analysis (not the drafters'

---

[2] This Court is aware of the import of a single word, considered in its context, and its placement in a statutory scheme. Recently, in an immigration case, this Court held that the placement of the indefinite article "a" before the noun "notice" meant that the government cannot issue multiple notices of an immigration hearing; it must issue a single, complete notice of hearing otherwise the notice is defective. *See Lopez v. Barr*, 925 F.3d 396, 402 (9th Cir. 2019), *reh'g en banc granted*, 948 F.3d 989 (9th Cir. 2020).

[3] But, as noted, in *Harmston*, this Court did not address the interplay between Rule 58(c) & (d)—the specific question presented here. Thus, *Harmston* is not precedent for a question it did not address. *Cooper Ind.*, 543 U.S. at 170.

aspirations). After all, "*the limits of the drafters' imagination* supply no reason to ignore the law's demands." *Id.*

*Bostock* undercuts *Harmston*'s atextual rationale and mode of analysis. "Stare decisis cannot justify adherence to an approach that Supreme Court precedent forecloses." *Fed. Trade Comm'n v. Credit Bureau Ctr., LLC*, 937 F.3d 764, 767 (7th Cir. 2019); William N. Eskridge, Jr., *Interpreting Law: A Primer On How To Read Statutes And The Constitution* 81 (2016) ("We are all textualists. That means that a judge must relate all sources of and arguments about statutory interpretation to a text"). This Court has held that when intervening Supreme Court precedent undercuts the mode of analysis underlying circuit precedent, it is not controlling. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (besides intervening Supreme Court holdings, modes of analysis are also binding); *see also Murray v. Mayo Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019).

As the text and grammar supply a ready answer on the interplay between Rule 58(c) & (d), the judicial inquiry ends. *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1358 (2018); *Boyle v. United States*, 556 U.S. 938, 950 (2013).

### 3. The district court's Local Rules also show that Rule 58(d) is not subject to the iron-clad timing rules in Rule 58(c)

The Local Rules state that a *"[n]otation in the civil docket of entry of a memorandum of decision, an opinion of the Court,* or a minute order of the Clerk shall not constitute *entry of judgment pursuant* to Fed. R. Civ. P. 58 and 79(a) *unless*

*specifically ordered by the judge*." L.R. 58-6 (C.D. Cal.) (emphasis added).

The judge never gave notice to the parties—that complied with the Local Rules—that the minute order at issue had become a judgment. This Court approved an earlier version of those Local Rules. *See Radio Tele.*, 183 F.3d at 930-932. That construction became "part of the [legal] scheme" of those rules. *Kimble v. Marvel Entm't, LLC*, 135 S.Ct. 2401, 2409 (2015). And when a law adopts language from a prior one, courts presume that its words "bring[] the old soil with" it. *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019) (cleaned up). Thus, the new Local Rules function as the old ones did, consistent with *Radio Television*.

## II. THE DISTRICT COURT ERRED CERTIFYING THE MINUTE ORDER AS A FINAL JUDGMENT

A judgment creditor can move an issuing court to order a judgment registered in a foreign federal district. *See, e.g.*, *Columbia Pic. Tele.*, 259 F.3d at 1186. But the precondition to relief is that the movant must have a *judgment*. 28 U.S.C. §1963; 18 Moore's Federal Practice — Civil § 130.32 (2020) ("To register the judgment [under 28 U.S.C. § 1963], a person presents a certified copy of *the judgment* to the court clerk in the district for filing." (emphasis added)). That, Appellee does not have.

"We begin, as usual, with the [relevant] text." *Maslenjak v. United States*, 137 S. Ct. 1918, 1924 (2017). As relevant, §1963 provides:

> A *judgment* in an action for the recovery of money or property entered in any court of appeals, district court, bankruptcy court, or in the Court of International Trade may be registered by filing a certified copy of

27

the *judgment* in any other district or, with respect to the Court of International Trade, in any judicial district, when the *judgment has become final* by appeal or expiration of the time for appeal or when ordered by the court that entered the *judgment* for good cause shown.

28 U.S.C. §1963 (emphasis added).

Construing that provision, courts have held that §1963 only allows a party to register a final judgment, not interlocutory orders. *See In re Prof'l Air Traffic Controllers Org. (PATCO)*, 699 F.2d 539, 544 (D.C. Cir. 1983). The Federal Rules of Civil Procedure have a specific meaning for what amounts to a judgment. Under those rules, a judgment "includes a decree and any order from which an appeal lies." Fed. R. Civ. P. 54(a) (emphasis added). But a judgment does not "include recitals of pleadings, a master's report, *or a record of prior proceedings*." *Id.* (emphasis added). Thus, even under longstanding circuit precedent, minute orders—which are a record of prior court proceedings—are not judgments. *Carter v. Beverly Hills Sav. & Loan Ass'n*, 884 F.2d 1186, 1189 (9th Cir. 1989) (A minute order is "a description of what transpired in the courtroom."). What's more, under *Radio Television Espanola*, until the district court gives notice that it has entered final judgment, the minute order is not a judgment and appeal time does not begin. *See* 183 F.3d at 930-932. That is also true under Fed. R. Civ. P. 58(d).

That conclusion forecloses any basis for certification under §1963 for good cause. The "good cause shown" exception in §1963 is inseparable from the requirement for a "judgment." *See* 28 U.S.C. §1963. As shown, without a judgment,

28

Appellee cannot trigger the registration statute. *See In re Prof'l Air Traffic Controllers Org.*, 699 F.2d at 544 (Section 1963 allows a party to register only *the judgment* not parts of the judgment).

In conclusion, the district court erred when it certified Appellee's civil minute order as a final judgment.

### III.    THE ATTORNEY'S FEE AWARD IS UNREASONABLE

Statutory fee-shifting is not and has never been "a bonanza" to a prevailing party. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 766 (Tex. 2012) (Hecht, J., concurring). Instead, a reasonable fee "is one that is not excessive or extreme, but rather [is] moderate or fair." *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016) (cleaned up). That is as much true in Texas as it is in this circuit. *First*, Appellant challenges the attorney's fees award because the district court improperly awarded fees for the entire litigation, not the fee-bearing portions only. *Second*, the rates claimed and awarded are unreasonable. *Third*, the fee amount was unreasonable. This Court should reverse and remand.

#### 1. The district court improperly awarded Appellee attorney's fees for non-fee bearing components of the representation

Appellee moved for relief both under the TCPA and Fed. R. Civ. 12(b)(6). *See Clifford v. Trump*, 339 F. Supp. 3d 915, 918-919 (C.D. Cal. 2018). Below, Appellee briefed both arguments. *Id.* In fact, even before filing those motions, Appellee spent substantial time researching and briefing a motion to transfer from

the east to the west coast. ER-105-107. The district court believed that the law required it to compensate Appellee for the entire litigation, so it awarded him fees for all those motions. *Id.* But only the anti-SLAPP motion is fee-bearing. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a)(1). Characteristic of the submitted billing entries here, Appellee's attorneys failed to demarcate the time they spent on their Rule 12(b)(6) portion of their motion. To compound matters, the district court awarded Appellee substantial fees for the motion to transfer. ER-105-110.

In doing so, the district court erred greatly because it was powerless to award Appellee fees for the Fed. R. Civ. P. 12(b)(6) and transfer motions. *Century Sur. Co. v. Prince*, 782 F. App'x 553, 557-558 (9th Cir. 2019). In *Prince*, this Court, relying on California anti-SLAPP jurisprudence, held that a prevailing party could not collect attorney's fees for work done on a concurrently filed Fed. R. Civ. P. 12(b)(6) motion. *Id.* That rule applies here.[4] Appellee is asking for a windfall because his fee request encompasses the entire appeal—and failed to deduct time spent on Fed. R. Civ. P. 12(b)(6) and transfer motion and arguments.

---

[4] Although *Prince* relied on California anti-SLAPP jurisprudence to reach its conclusion, it applies here with equal force since this Court held that the California anti-SLAPP law is identical to the TCPA. *Clifford*, 818 F. App'x at 747; *see also generally Heffernan v. City of Paterson*, *N.J.*,136 S.Ct. 1412, 1418 (2016) ("[I]n the law, what is sauce for the goose is normally sauce for the gander.").

Appellant should not be penalized because Appellee's billing records failed to *fully* exclude time for non-fee-bearing motions. Under this Court's precedent, the party seeking fees has the burden of establishing that the fees requested are compensable and reasonable. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007). And if, as here, the billing records are poor and fail to provide needed clarity, this Court "may reduce hours to offset poorly documented billing." *Id.* (cleaned up). Texas attorney's fee law leaves no doubt about the result in this diversity jurisdiction case: "Charges for * * * *inadequately documented work* should be *excluded*." *El Apple I,* 370 S.W.3d at 762 (emphasis added).

### 2. The rates Appellee claimed and those that the district court awarded are unreasonable

The fee applicant bears the burden to "produce satisfactory evidence" of prevailing rates. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008). The district court awarded Appellee $841.64 per hour for C. Harder; $756.49 per hour for R. Stonerock; $611.99 per hour for D. Esper; $586.50 per hour for S. Frackman; and $307.60 per hour for T. Nguyen. ER-90.

Those rates are excessive. In determining the proper rates, this Court need not accept the parties' representations of what is a reasonable rate. The Court can rely on its own experience and knowledge of customary rates in the legal market for attorneys who appear before it. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011). That this was an anti-SLAPP motion alone does not change the calculus in

favor of the very high fees claimed here. That is true even here in the Golden State. *See 569 E. Cty. Boulevard LLC v. Backcountry Against the Dump, Inc.*, 6 Cal. App. 5th 426, 439 (2016) (affirming $275 hourly rate for "seasoned attorneys" in an "uncomplicated anti-SLAPP motion"); *Marshall v. Webster*, 54 Cal. App. 5th 275 (2020) (affirming in anti-SLAPP motion rates of $450 and $500 for "experienced civil litigators * * * given their expertise and experience").

And even the federal courts have adopted rates in a similar range as that announced above. To begin with, this Court has also approved rates within that range, too. *Red v. Kraft Foods Inc.*, 680 F. App'x 597, 599 (9th Cir. 2017) (affirming anti-SLAPP "hourly rates of $550 for partners and senior associates, $352 for junior associates, and $211.66 for law clerks and paralegals"). *Mireskandari v. Daily Mail & Gen. Tr. PLC*, 2014 WL 12586434, at *13 (C.D. Cal. Nov. 7, 2014), *aff'd sub nom., Mireskandari v. Associated Newspapers, Ltd.*, 665 F. App'x 570 (9th Cir. 2016) (approving rate of $520 to $552 for senior partner with 25-years' experience, $448-$464 for partner-in-charge with 20-years' experience, and $308-$352 for senior associate with almost 8-years' experience).

As applied here, the Court should set rates at no more than $450 and $500 for partners and senior attorneys and $350 for associates. *See Marshall*, 54 Cal. App. 5th 275 (2020) (affirming rates of $450 and $500 for "experienced civil litigators * * * given their expertise and experience"); *Red*, 680 F. App'x at 599.

## **CONCLUSION**

Appellant requests that this Court reverse the district court orders at issue.

Respectfully submitted,

*/s/ Clark O. Brewster*

Clark O. Brewster

Mbilike M. Mwafulirwa

BREWSTER & DE ANGELIS, P.L.L.C.

2617 East 21st Street

Tulsa, OK  74114

Tel: (918) 742-2021

cbrewster@brewsterlaw.com

*Attorneys for Plaintiff/Appellant S. Clifford*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** 20-55880

The undersigned attorney or self-represented party states the following:

[  ] I am unaware of any related cases currently pending in this court.

[  ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ x ]  I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

*Clifford v. Trump,* 18-56351:  This appeal stems from the same case in the District Court and was brought up on the merits of the case itself.  This Court affirmed the judgment in its entirety in an unpublished memorandum opinion, and denied rehearing en banc. *Clifford v. Trump*, 818 Fed. Appx. 746 (9th Cir. 2020). Ms. Clifford filed a petition for certiorari, which the U.S. Supreme Court denied.

**Signature**  */s/ Clark O. Brewster*          **Date**  04/22/2021

34

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 20-55880

I am the attorney or self-represented party.

**This response contains 8,350 words,** excluding the items exempted by Fed.

R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P.

32(a)(5) and (6).

I certify that this response *(select only one)*:

[ X ] complies with the word limit of Fed. R. App. P. 27(d)(2)(A).

[   ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[   ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5),
   Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[   ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[   ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select
   only one)*:
   [   ] it is a joint brief submitted by separately represented parties;
   [   ] a party or parties are filing a single brief in response to multiple briefs; or
   [   ] a party or parties are filing a single brief in response to a longer joint brief.

[   ] complies with the length limit designated by court order dated _____.

[   ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** _/s/ Clark O. Brewster_          **Date** _4/22/2021_

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 22, 2021, I electronically filed the foregoing *(Amended/Corrected Appellant's Opening Brief)* with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the court's CM/ECF system which will send notification of such filing to all counsel of record.

*/s/Clark O. Brewster*
Clark O. Brewster